

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable J. C. Gowdy
County Auditor
Wichita Falls, Texas

Dear Sir:

                Opinion Number O-2916
                Re: Authority of Commissioners'
                Court to purchase road ma-
                chinery and pay for same
                out of bond fund; and author-
                ity of Commissioners' Court
                to construct highways without
                asking for competitive bids.

      Your recent request for an opinion of this depart-
ment on the questions herein stated, has been received. We
quote from your letter as follows:

      "Sometime ago a bond issue was voted in Pre-
cinct No. 3, Wichita County, Texas, in the amount
of $45,000, for the purpose of construction, main-
tenance and operation of macadamized, graveled or
paved roads in said Precinct No. 3.

      "This department is requesting your opinion on
the following questions:

      "1.  Does the Commissioners' Court have author-
ity to purchase machinery and pay for same out of
the funds received from the sale of these bonds?

      "2.  Does the Commissioners' Court have author-
ity to do this work in the same manner that they
provide for other improvements and construction
work on the county highway system instead of ask-
ing for bids from private contracting concerns?"

Honorable J. C. Gowdy, page #2

Authority is given by Section 52, Article 3, of the Constitution, to any county, any political subdivision of the county, any number of adjoining counties, etc., acting under legislative provision, upon a vote of a two-thirds majority of the qualified, resident, property taxpayers of the district or territory to be affected thereby, in addition to all other debts, to issue bonds in any amount not in excess of one-fourth of the assessed valuation of the real property of such district or territory, for, among other purposes, the following:

"The construction, maintenance and operation of macadamized, graveled or paved roads and turnpikes, or in aid thereof."

Your first question relates to the right of a road district under the provisions of the Constitution and pursuant to an Act of the Legislature, to devote part of an issue of bonds, duly voted by the taxpayers of the road district, to the purchase of road machinery.

It is elementary that the funds derived from the sale of bonds may not be diverted from the purposes specified in the proposition submitted to the electors. Aransas County vs. Coleman-Fulton Pasture Company, 191 S.W. 555; Heathman vs. Singletary, 12 S.W. (2d) 150; Huggins vs. Baden, 259 S.W. 204.

It follows that where a departure from the proposition appearing on the ballot paper is alleged, the only question is whether the expenditure contemplated is within or without the proposition on its true construction; or, under our particular set of facts, whether or not the purchase of road machinery would be incidental and necessary to the construction, maintenance and operation of roads. Adams vs. Mullen, 244 S.W. 283.

Construing propositions to this end, it has been held by the courts that "road" includes a bridge constituting a necessary length in the road, and that "turnpikes" means hard-surfaced roads. Aransas County vs. Coleman-Fulton Pasture Company; Adams vs. Mullen, supra.

By an anology of reasoning this department has held that "A survey is necessary in the acquisition of a right-of-way". (Opinion Number O-962). Also, that right-of-way agents

Honorable J. C. Gowdy, page #3

may be paid from the bond fund (Opinion O-1379); that bond
money may be used for fencing land acquired for right-of-way
where bonds were voted for the purpose of purchasing right-
of-way for the use of the State Highway Department in build-
ing State designated highways. (Opinion O-2430).

If the Commissioners' Court exercises their option
to construct the roads contemplated in said $45,000 bond
issue themselves, and supervise same instead of hiring a
private contractor, then we believe that there is no doubt
that road machinery bought for the purpose of constructing
and maintaining these particular roads would be incidental
and necessary in carrying out the purpose for which the bonds
were voted - that is, to construct and maintain public roads.

Therefore, it is our opinion that money derived from
the sale of bonds may be used to purchase road machinery to
be used in constructing and maintaining roads contemplated in
said $45,000 bond issue.

In answering question number two, we find that Article
2368a of Vernon's Annotated Revised Civil Statutes of Texas pro-
vides that except in cases of public calamity, a contract call-
ing for the expenditure of $2,000 or more from county funds,
must be submitted for competitive bids upon published notice,
and the contract must be let to the lowest and best bidder. A
contract requiring the expenditure of less than $2,000 and more
than $500 must be let at competitive bids by the Commissioners'
Court, except in case of public necessity or public calamity.
The purpose of these provisions is to enable counties to ob-
tain the performance of any public work at the lowest possible
cost to taxpayers. However, the Commissioners' Court has the
option of carrying on the work itself and the provisions of
Article 2368a do not apply to any work done under the direct
supervision of the County Commissioners and paid for by the
day. Gulf Bitulithic Company vs. Nueces County (Commission of
Appeals) 11 S.W. (2d) 305; 11 Texas Jurisprudence, 843.

Therefore, it is our opinion that the Commissioners'
Court has authority to do this work in the same manner that
they provide for other improvements and construction work on
the county highway system instead of asking for bids from

Honorable J. C. Gowdy, page #4

private contracting concerns.

Trusting that this answers your questions, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By Claud O. Boothman
Assistant

COB-e

APPROVED JAN 21, 1941

ATTORNEY GENERAL OF TEXAS